People v Roberts (2018 NY Slip Op 00725)





People v Roberts


2018 NY Slip Op 00725


Decided on February 2, 2018


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 2, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., CENTRA, CARNI, CURRAN, AND TROUTMAN, JJ.


1315 KA 16-00618

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
MARVIN ROBERTS, DEFENDANT-APPELLANT. 






KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C., WASHINGTON, D.C. (THOMAS G. SCHULTZ OF COUNSEL), AND TIMOTHY P. DONAHER, PUBLIC DEFENDER, ROCHESTER, FOR DEFENDANT-APPELLANT.
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (NANCY GILLIGAN OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Monroe County Court (Douglas A. Randall, J.), rendered December 1, 2015. The judgment convicted defendant, upon his plea of guilty, of criminal possession of a weapon in the second degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously reversed on the law, the plea is vacated, that part of the omnibus motion seeking to suppress tangible evidence is granted, the indictment is dismissed, and the matter is remitted to Monroe County Court for proceedings pursuant to CPL 470.45.
Memorandum: On appeal from a judgment convicting him upon his plea of guilty of criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]), defendant contends that County Court erred in denying that part of his omnibus motion seeking to suppress tangible evidence, including a handgun, that a police officer seized from him. We agree.
The evidence from the suppression hearing establishes that, at approximately 4:20 a.m., a Rochester police officer heard a radio broadcast stating that a person had been taken to a hospital by private vehicle for treatment of a gunshot wound. Approximately 15 minutes later, the officer heard a further broadcast stating that the shooting had occurred at a bar on Lake Avenue in Rochester, and that the suspect was a male Hispanic, approximately five feet, ten inches tall with a medium build. The broadcast did not indicate when the shooting had occurred, or whether it was inside or outside the bar. Along with other police officers, the officer responded to the bar's location within two minutes, where he saw five people standing in a parking lot near a vehicle. The officer testified that one member of the group "appeared to be a male Hispanic, two were male blacks, one was a female white and the other was male white." The officer searched the parking lot and found blood spots and a bullet fragment located between 10 and 25 feet from the group, but the People introduced no evidence indicating how long those items may have been there.
Another officer, who did not testify at the hearing, approached the five people and questioned them. The testifying officer stated that he only heard the other officer ask the group about the shooting, and one, unidentified member of the group replied that "they didn't see anything, they didn't hear anything, that nothing like that happened out here." Nevertheless, the testifying officer decided to frisk all members of the group. He testified that he began the process with defendant, a male black, because he was standing closest to him. Defendant turned away from the officer, who seized defendant's hands, patted defendant's waist, and discovered a weapon.
We agree with defendant that, based on the evidence at the suppression hearing, the court erred in refusing to suppress the weapon. As an initial matter, we conclude that the police had an [*2]objective, credible reason to approach the group of five people in the parking lot and to request information in light of the report of a shooting at or near that location at some unidentified earlier time. Thus, we conclude that the police encounter was lawful at its inception (see People v Hollman, 79 NY2d 181, 185 [1992]; People v De Bour, 40 NY2d 210, 220 [1976]). The People correctly concede, however, that the officer's encounter with defendant constituted a level three forcible detention under the four-tiered De Bour framework (40 NY2d at 223; see generally People v Bora, 83 NY2d 531, 535 [1994]), and thus required "a reasonable suspicion that [defendant] was involved in a felony or misdemeanor" (People v Moore, 6 NY3d 496, 499 [2006]).
We conclude that, "[b]ecause of the lack of correspondence between defendant's appearance and the description of the suspected [shooter that was] transmitted to the officer[] . . . , the officer[] had no basis for concluding that the reported crime had been committed by defendant" (People v Ross, 251 AD2d 1020, 1021 [4th Dept 1998], lv denied 92 NY2d 882 [1998]; cf. People v Wilson, 144 AD3d 1500, 1500 [4th Dept 2016], lv denied 28 NY3d 1151 [2017]; People v Waters, 259 AD2d 642, 643-644 [2d Dept 1999]). "Nor can the [frisk of defendant] and seizure of the gun be justified as having been in the interests of the officer['s] safety, since there was no testimony that the officer[] believed defendant to be carrying a weapon" (People v Thompson, 127 AD3d 658, 662 [1st Dept 2015]), and the People presented no other evidence establishing that the officer had reason to fear for his safety (cf. People v Fletcher, 130 AD3d 1063, 1065 [2d Dept 2015], affd 27 NY3d 1177 [2016]). Consequently, we conclude that the People failed to establish that the officer had "a reasonable suspicion that [defendant] was involved in a felony or misdemeanor" (Moore, 6 NY3d at 499). Because the forcible detention and frisk of defendant was unlawful, the handgun and other tangible evidence seized by the police should have been suppressed. We therefore vacate the plea, dismiss the indictment, and remit the matter to County Court for proceedings pursuant to CPL 470.45 (see People v Elliott, 140 AD3d 1752, 1753 [4th Dept 2016]).
Entered: February 2, 2018
Mark W. Bennett
Clerk of the Court