OPINION OF THE COURT
H. Patrick Leis III, J.
The defendant is charged with criminal possession of a controlled substance in the first degree.
The physical evidence underlying the indictment (cocaine) was seized from a safe in defendant’s bedroom pursuant to a search warrant which was executed on September 29, 1990. The warrant authorized the search of defendant’s residence (located at 33 Hy Place, Lake Grove, New York) for: "Cocaine, U.S. Currency as proceeds of the illicit drug business, books and records reflecting transactions of the illicit drug business, drug paraphernalia including items for the storage, packaging and weighing of cocaine”.
The defendant moves to controvert the search warrant and to suppress the cocaine which was seized upon the grounds that the application in support of the warrant contains material and false allegations made knowingly or in reckless disregard of the truth pursuant to People v Alfinito (16 NY2d 181), and Franks v Delaware (438 US 154). The defendant also argues that the search warrant was issued without probable cause and that it lacks specificity and is overbroad in that it fails to identify the bedroom safe as a place to be searched. Oral argument was heard on June 25, 1992.
The application presented to the issuing Magistrate contained two sworn affidavits each dated September 28, 1990— one by Detective Frank Giardina and the other by Brian Fuhrmann (an informant whose identity was disclosed to the issuing Magistrate and who is now known to the defendant). Detective Giardina’s affidavit in support of the application for the search warrant contained no personal knowledge, but was based upon information and belief, the sources being an attached sworn statement of a confidential informant and conversations with fellow police officers, that cocaine would be found at 33 Hy Place, Lake Grove, Suffolk County, New York. The alleged conversations with fellow police officers were never divulged to the issuing Magistrate, and this court accords no weight or significance to same. Detective Giardina’s affidavit went on to state:
"The attached sworn statement was given by a confidential informant. Based upon information and belief, the source *5 being a computerized criminal history report, the Confidential Informant has pending Felony criminal charges. No promises were given to the informant in exchange for the informant’s cooperation other than the informant was advised that the Suffolk County District Attorney’s Office would be told of the informant’s cooperation.
"Based upon information supplied by the confidential informant and which is contained in the attached sworn statement, there is probable cause to believe that cocaine is concealed within the above described premises. Said information contained within the attached sworn statement was provided to your deponent approximately one hour after the confidential informant’s arrest on Felony charges.”
Fuhrmann’s sworn statement alleged that on September 28, 1990, he was with the defendant and observed him purchase approximately 10 ounces of cocaine for $4,000 which Fuhrmann secreted in Galimulla’s car. They then drove to 33 Hy Place, Lake Grove, New York, at which time they went into defendant’s house wherein Fuhrmann observed Galimulla place the cocaine on a dresser. Fuhrmann also observed a digital scale used to weigh cocaine and hypodermic needles in the closet and a case of cocaine under the defendant’s bed. Fuhrmann also stated that he has seen defendant sell cocaine many times at this location.
The defendant argues that the search warrant application fails the two-pronged Aguilar-Spinelli test (Aguilar v Texas, 378 US 108; Spinelli v United States, 393 US 410) as mandated under New York constitutional standards enunciated in People v Griminger (71 NY2d 635). He submits that Brian Fuhrmann’s statement is unreliable because it is not a statement against penal interest and even if it was, such would not guarantee its truthfulness. He further submits that the informant’s statement is unreliable because Fuhrmann was under arrest for felony crimes of forgery when he gave his sworn statement.
Defendant’s reliance on People v Cassella (143 AD2d 192) is misplaced. In Cassella, the informant made oral, unsworn statements, not a written sworn statement. This court finds that Fuhrmann’s statement was a declaration against penal interest in that he admitted possessing cocaine while in the defendant’s car.
The defendant, citing People v Balzer (145 AD2d 744 [3d Dept 1988]), also argues that information provided by the *6 informant was not corroborated by the police, and therefore cannot be deemed reliable. Although the Third Department in Balzer did find that the affidavit of the informant satisfied the Aguilar-Spinelli test since it was made under oath; against his own penal interest; based upon personal knowledge; and was corroborated by additional information obtained by the police, that holding was effectively overruled in People v Deliz (172 AD2d 877, lv denied 78 NY2d 921 [3d Dept 1991]), wherein that same Court stated without equivocation that: "the information that served as the basis for the warrant came from the confidential informant’s sworn statement, rather than from hearsay information relayed by a police officer. Under these circumstances, the Aguilar-Spinelli test is inapplicable. ” (People v Deliz, supra, at 878 [emphasis supplied]; also, to the same effect are People v Bartolomeo, 53 NY2d 225, and People v Sullivan, 56 NY2d 378; and cf., People v Taylor, 73 NY2d 683.)
Thus, Fuhrmann’s sworn statement is not tested by AguilarSpinelli standards but rather usual tests applied to nonhearsay information. Those statements are considered reliable because if Fuhrmann lied to Detective Giardina about material facts contained in his affidavit then he could be prosecuted for giving a false sworn statement (see, People v Hicks, 38 NY2d 90). It is also possible that he could be prosecuted for possession of cocaine as a result of said statement.
While it certainly would be better practice for the police to make some effort to corroborate an informant’s statement, especially where the informant is in custody and has himself been charged with a crime, case law does not, as yet, mandate such a practice.
Fact patterns such as this one, however, test severely the present state of the law which holds that a sworn statement alone is sufficient basis to support the reliability of the informant.
While defense counsel is correct that in most of the cases cited the police did make efforts to corroborate the informant’s statement, no case specifically holds that absence of corroboration requires suppression where a sworn statement by the informant is given.
In determining the validity of the warrant, each situation must be judged on its own particular facts (People v Marshall, 13 NY2d 28; cf., People v Kreichman, 37 NY2d 693) and "depends on whether the showing, at the time of issuance, *7 satisfies fundamental requirements as to the existence of probable cause * * * The paramount concern, then, is what transpires at the issuance of the warrant and not what occurs thereafter” (People v Rainey, 14 NY2d 35, 38-39; People v Hendricks, 25 NY2d 129; People v Nieves, 36 NY2d 396; see, People v Candella, 171 AD2d 329). The affidavit in support of the search warrant application is not to be read "hypertechnically” (People v Robinson, 68 NY2d 541, 552; People v Edwards, 69 NY2d 814) but rather a "common sense and realistic fashion” (United States v Ventresca, 380 US 102, 108) and "in the clear light of everyday experience and accorded all reasonable inferences” (People v Hanlon, 36 NY2d 549, 559; People v Kane, 175 AD2d 881). The issuing Magistrate may draw all normal inferences from the allegations of fact presented to him (People v Ianniello, 156 AD2d 469, lv denied 75 NY2d 920). The reviewing court applies these same tests. Marginal cases, including those with issues of mere doubt as to the veracity of allegations contained in the supporting affidavit, are to be resolved in favor of the warrant (People v Rogers, 15 NY2d 422; People v Williams, 119 AD2d 606, lv denied 68 NY2d 761; see, People v Alaxanian, 76 AD2d 187, affd 54 NY2d 725; People v Gonzalez, 150 Misc 2d 187).
Applying these criteria to the instant case, the court finds that the issuing Magistrate had before him sufficient uncontroverted facts to determine that probable cause existed for issuance of the warrant.
The defendant also argues that the cocaine seized should be suppressed since it was discovered in a safe which was not specifically enumerated as a place to be searched on the face of the warrant. The court denies this request as the cocaine enumerated in the search warrant could easily have been contained in the safe and so could properly be searched for therein (see, People v Padilla, 132 AD2d 578).
Galimulla also requests that an Alfinito-Franks hearing be held because the search warrant allegedly contains material and false allegations by Detective Giardina and Fuhrmann made knowingly or in reckless disregard of the truth (People v Alfinito, 16 NY2d 181, supra; Franks v Delaware, 438 US 154, supra).
The defendant claims that Detective Giardina misled the issuing Magistrate into believing that he learned of the pending felony charges against Fuhrmann from a computerized criminal history report and that no promises were made to *8 Fuhrmann in return for his cooperation, when, in fact, he was the officer who arrested Fuhrmann and made such promises. In support, defendant annexes a sworn statement given by Fuhrmann to Lieutenant William G. Frey on November 12, 1990 wherein Fuhrmann states that Giardina was the officer who actually arrested him on felony charges and that Giardina promised to "let the DA know I helped” in exchange for his September 28, 1990 affidavit in support of the search warrant application.
Defendant also contends that Fuhrmann’s September 28, 1990 affidavit is inherently false and made in knowing and reckless disregard for the truth in that Fuhrmann contradicts its contents in an unsworn, undated tape recorded statement he gave to defendant’s then attorney, Martin Efman, Esq.
Rules entitling defendant to suppression and/or a hearing are enumerated in detail in Franks (438 US, supra, at 171-172): "In sum, and to repeat with some embellishment what we stated at the beginning of this opinion: There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger’s attack must be more than conclusory and must be supported by more than a mere desire to cross-exam-inc. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the Defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing.” (Emphasis supplied.)
The clear reason for a preliminary showing that the warrant cannot be sustained in the absence of claimed falsity, prior to granting a hearing was explained by the Court: "Nor *9 if a sensible threshold showing is required and sensible substantive requirements for suppression are maintained, need there be any new large-scale commitment of judicial resources; many claims will wash out at an early stage, and the more substantial ones in any event would require judicial resources for vindication if the suggested alternative sanctions were truly to be effective. The requirement of a substantial preliminary showing should suffice to prevent the misuse of a veracity hearing for purposes of discovery or obstruction. And because we are faced today with only the question of the integrity of the affiant’s representations as to his own activities, we need not decide, and we in no way predetermine, the difficult question whether a reviewing court must ever require the revelation of the identity of an informant once a substantial preliminary showing of falsity has been made.” (Franks v Delaware, 438 US, supra, at 170; emphasis supplied.)
The rule of Franks (supra) is likewise the law in New York (People v Tambe, 71 NY2d 492).
The case at bar appears to present a conundrum since all factual allegations establishing probable cause are contained in the sworn affidavit of a disclosed informant rather than a police officer affiant relaying information provided by a "hearsay” informant.
The Court, in Franks (supra), left open the possibility of challenging a nonpolice affiant because it held that hearings may be held and suppression may result where the "affiant” perjures himself or recklessly disregards the truth. Its preclusion of challenges to a nongovernmental informant’s statement is clearly to bar challenging only confidential "hearsay” statements.
Accordingly, the court today holds that under the circumstances of the case at bar, where: (a) the informant is disclosed to the defendant, and (b) the informant’s sworn statement provides the sole basis for a finding of probable cause, the ruling in Franks (supra) applies to permit the defendant to challenge the statement of the known informant.*
Applying the tests set forth in Franks (supra), the court has examined the alleged claims of falsity (as set forth supra) in light of: (1) the September 28, 1990 affidavit of Detective Frank Giardina; and (2) the September 28, 1990 affidavit of *10 the disclosed informant, Brian Fuhrmann; and (3) the unsworn, undated transcript of Brian Fuhrmann’s tape recorded conversation with defendant’s then attorney, Martin Efman, Esq.; and (4) the November 12, 1990 affidavit of Brian Fuhrmann given to Lieutenant William G. Frey reaffirming his September 28, 1990 affidavit and further stating that he lied to Efman in their taped conversation.
Close examination of Fuhrmann’s unsworn statement is especially revealing. While saying he was choked by Detective Giardina and felt pressured into the September 29, 1990 affidavit, he never disclaims that he saw defendant buy the $4,000 worth of cocaine; that defendant possessed that cocaine and drug paraphernalia in his house or that Galimulla had cocaine under his bed. He does state he told Giardina that defendant does not sell drugs but only uses them. In short, Fuhrmann never says that he lied in his affidavit when he provided the information showing that drugs were to be found at defendant’s residence.
The court does not find Detective Giardina’s affidavit to be misleading. Detective informed the issuing Magistrate that Fuhrmann had pending felony charges and that he gave his sworn statement while under arrest for these charges. Further, the court does not find Fuhrmann’s November 12, 1990 sworn statement to be inconsistent with Detective Giardina’s affidavit as regarding any promises made to Fuhrmann in exchange for his cooperation.
In addition, defendant infers that if Detective Giardina physically abused, intimidated and/or coerced Fuhrmann into giving his September 28, 1990 statement, then Detective Giardina would have acted in reckless disregard of the truth. Such an argument is not persuasive. Fuhrmann’s taped, undated, unsworn statement to defendant’s former counsel is contradicted by a subsequent sworn statement. Furthermore, it does not say that what Fuhrmann told Detective Giardina on September 28, 1990 about defendant’s drug involvement was untrue. In fact, the taped statement materially corroborates the truth of Fuhrmann’s earlier sworn statement.
Uncontested facts remain that Detective Giardina stated in his affidavit to the issuing Magistrate, that he told Fuhrmann he would advise the Suffolk County District Attorney of his (Fuhrmann’s) cooperation. Moreover, Fuhrmann’s affidavit provided the issuing Magistrate with uncontroverted facts that the defendant bought $4,000 worth of cocaine on Septem *11 ber 28, 1990; that the cocaine was then brought to the defendant’s bedroom dresser; that the informant saw a digital scale and 20 cases of hypodermic needles in the closet plus cocaine under defendant’s bed.
Pursuant to Franks (supra) these remaining uncontroverted facts provided the issuing Magistrate with sufficient probable cause to grant the warrant. Accordingly, no hearing is required since the defendant has failed to make the requisite preliminary showing that probable cause does not exist in the absence of the alleged false statements.
To the extent that defendant seeks an in camera hearing pursuant to People v Darden (34 NY2d 177), the application is denied.
In short Franks/Alfinito (supra) is the traditional method by which a defendant challenges the credibility of the affidavit in support of the search warrant application, whereas, Darden (supra) is the well-established means to challenge the existence of and the credibility of a "hearsay” informant.
In the instant case, it is clear that Darden (supra) is inapplicable. The informant is not only known to but has been interviewed by the defendant. Moreover, he is not a "hearsay” informant but a "sworn” informant attesting to claimed personal firsthand knowledge of defendant’s alleged criminal conduct.
Accordingly, the defendant’s motion to controvert the search warrant, to suppress the cocaine and any other evidence seized thereunder and have a hearing, is, in all respects denied.
Defendant’s additional request to suppress oral postarrest statements is granted to the extent that a Huntley hearing shall be held immediately prior to the trial.

 This court is aware of the decision in People v Bradley (181 AD2d 316 [1st Dept]), and finds it to be inapposite.